Carmen N. BARRERAS RUIZ, Angel O. Montañez Rivera, Maria Agrait Arroyo, Carmen Rios Vazquez, Carlos Manzanal Valencia, and Francisco Aviles Rodriguez, Plaintiffs,

v.

THE AMERICAN TOBACCO COMPANY; R.J. Reynolds Tobacco Company; Philip Morris, Inc.; Brown and Williamson Tobacco Corporation; Lorillard Tobacco Company, Inc.; Lorillard, Inc.; the Tobacco Institute, Inc.; B.A.T. Industries PLC, and the Council for Tobacco Research—USA Inc., Defendants.

Civil No. 96–2300 JAF.

United States District Court, D. Puerto Rico.

May 19, 1997.

Jorge Oritz–Brunet, Ortiz–Toro & Ortiz–Brunet, San Juan, PR, Alvaro R. Calderon, Jr., San Juan, PR, for Plaintiffs.

Angel M. Cuevas–Trisan, Manuel A. Guzman–Rodriguez, McConnell Valdes, San Juan, PR, Heriberto J. Burgos–Perez, Salvador Antonetti–Zequeira, Fiddler Ginzalez & Rodriguez, San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

This case involves a complaint for damages alleged by six smokers of tobacco products against several tobacco products manufacturers and the Tobacco Institute. Class certification has been requested but will not be considered in this Order. Defendant Tobacco Institute moves for dismissal under Fed. R.Civ.P. 12(b)(2) based on a lack of personal jurisdiction under Puerto Rico's long-arm statute, 32 L.P.R.A.App. III, Rule 4.7(a) (1983), and under the Due Process Clause of the United States Constitution, U.S. Const. Amend. XIV § 1.

## I.

### Legal Standards

#### A.  Motion to Dismiss Standard

In assessing a motion to dismiss, "[w]e begin by accepting all well-pleaded facts as true, and we draw all reasonable inferences in favor of the [nonmovant]." *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir.1993). The court will only accept plaintiff's well-supported conclusions or interpretations of law. *Id.*

#### B.  Personal Jurisdiction

■ Each of the two kinds of personal jurisdiction, general and specific, entails its own analysis. General personal jurisdiction requires the defendant to have been systematically and continuously active in the forum, although such activity was unconnected with the cause of the suit. *Foster–Miller, Inc. v.*

*Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir.1995).

Specific personal jurisdiction relies on two distinct bodies of law—the forum's long-arm statute and constitutional due process requirements. *Id.* Of the five provisions in Puerto Rico's long-arm statute for establishing jurisdiction, two apply here. Defendants may be sued in Puerto Rico courts where defendants 1) have transacted business directly or through an agent, or 2) have participated in tortious acts within Puerto Rico directly or through an agent. 32 L.P.R.A.App. III R. 4.7 (1983).

■ Current interpretation of the Constitution generally requires three elements be satisfied to establish personal jurisdiction. *Foster–Miller*, 46 F.3d at 144. First, the litigation must stem from or relate to the forum state activities of the defendant. Second, especially in a contract action, defendant must have purposefully availed itself of the privilege of conducting activities in the forum state, exposing the defendant to the benefits and burdens of the enforcement of the state's laws. Finally, the exercise of jurisdiction based on these two gestalt factors must be reasonable. *Id.*

■ In contradistinction to contractual cases, specific jurisdiction in tort cases depends largely on the strength of the connection between the tortious conduct and the contact with the forum, rather than the purposeful availment of benefits in the forum. *Thompson Trading v. Allied Lyons PLC*, 123 F.R.D. 417, 426 (D.R.I.1989). As the Supreme Court stated in *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), even a single act may be sufficient to oblige a foreign corporation to submit to jurisdiction. *Id.* at 318, 66 S.Ct. at 159.

■ Without regard to the context of the proceedings, the plaintiff bears the burden of demonstrating jurisdiction. *Boit v. Gar-Tec Products*, 967 F.2d 671, 674–75 (1st Cir.1992). The district court must consider whether plaintiff has proffered all necessary facts to find personal jurisdiction. *Boit*, 967 F.2d at 675. *See also U.S.S. Yachts, Inc., v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.

1990), *quoted in Boit,* 967 F.2d at 675. As the arbiter of jurisdiction, the district court cannot make findings of fact—it can only accept plaintiff's proffered evidence as true if properly supported. *Boit,* 967 F.2d at 675.

## II.

### *Analysis*

■ Accepting all well-pleaded facts by the plaintiff as true, *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d at 971, we must ascertain whether this court has jurisdiction over defendant Tobacco Institute. No general jurisdiction exists here, since the Tobacco Institute has no particular or regular commercial interest in Puerto Rico through which it would have been continuously active in the forum. *See Foster–Miller,* 46 F.3d at 144.

The second leg of Puerto Rico's long-arm statute requires the allegation of the commission of a tort. *See* 32 L.P.R.A.App. III R. 4.7 (1983). Due Process in this tort action also requires plaintiffs to make a *prima facie* demonstration of the commission of a tort. Plaintiffs allege that defendant Tobacco Institute, along with the other defendants, in order to promote cigarette sales, committed "the misrepresentation, concealment and suppression of information regarding the addictive properties of nicotine."[1] *Docket Document No. 39 at 8.* In their opposition to this motion, plaintiffs paint defendant Tobacco Institute to be a co-conspirator with the tobacco manufacturers in the promotion and sale of cigarettes.

The Tobacco Institute was organized to spread favorable scientific and medical information to consumers about smoking. *Fahey v. R.J. Reynolds Tobacco,* No. CA 927221, 1995 WL 809837, at *2 (Mass. Super.Ct. June 12, 1995). Since its founding, officers and directors of defendants Phillip Morris and R.J. Reynolds have served on the Tobacco Institute's executive committee. *Id.* Although a nonprofit organization, the Tobacco Institute is an entity tightly intertwined with its cigarette-manufacturing sponsors. These sponsors undisputedly manufacture tobacco products that are actively publicized and sold in this forum. However close the connection between defendant Tobacco Institute and defendant manufacturers, this fact cannot by itself provide this court with jurisdiction over defendant Tobacco Institute. *See Thompson Trading,* 123 F.R.D. at 427–28. Rather, the plaintiffs must allege that defendant engaged in tortious activity in this forum. *Id.* at 428.

Plaintiffs provide much evidence of the Tobacco Institute's activities. The incestuous mingling of the cigarette manufacturers' directors and officers and those of the Tobacco Institute may be but one manifestation of its role as their public defender. Playing publicist to the tobacco industry logically leads to quite overt partisanship in favor of tobacco smoking. An example of this role, "The Cigarette Controversy," from 1974, *Docket Document No. 34, Appendix,* provides a glimpse at the fundamental mission of the Tobacco Institute: To undermine and counter negative scientific reports and societal attitudes about smoking. This pamphlet argues, for instance, that smokers may have higher rates of lung cancer and heart disease "because of the kind of people they happen to be," rather then because they smoke. *Id.* This kind of statement may have deceived smokers into believing their tobacco usage to be safe. Indeed, in the *Cipollone v. Liggett* case, 893 F.2d 541, 551 (3rd Cir.1990), the plaintiff had stated that "she had often read cigarette company or Tobacco Institute statements, reported in articles about the health consequences of smoking or reproduced in advertisements, stating that the link between smoking and disease has not been proven."

The Tobacco Institute asserts that plaintiffs' image of the Tobacco Institute as a co-conspirator is facile and unconvincing. However, the moniker of co-tortfeasor may stick. The Tobacco Institute indubitably endeavors to persuade consumers of the safety or limited danger of its sponsors' products. If the product whose sales are nourished by such

---

1. Our discussion deliberately excludes counts other than fraud since such claims against all plaintiffs, including violation of consumer protection statutes, negligence, breach of implied warranty, and strict liability, do not apply to the case against the Tobacco Institute, which is not a manufacturer of tobacco.

favorable publicity proves hazardous, knowledge of that hazard by the public relations machine amounts to tortious trickery. The allegations of fraud against the Tobacco Institute place it appropriately alongside its sponsors, the cigarette manufacturers. Wholly reasonable is jurisdiction over a party credibly alleged to be a tortfeasor in Puerto Rico.

Accepting their well-supported allegations as true, plaintiffs have presented a *prima facie* case that the Tobacco Institute falsely represented the dangers of cigarette smoking to the consumers of cigarettes, including those in Puerto Rico. *See Boit,* 967 F.2d at 675. The alleged commission of tortious fraud in the forum of Puerto Rico suffices to grant jurisdiction both under Puerto Rico's long-arm statute, 32 L.P.R.A.App. III R. 4.7 (1983), and the Due Process Clause, U.S. Const.Amend. XIV § 1.

## III.

### *Conclusion*

Although we presently hold that we will allow this suit to continue as against the Tobacco Institute, the issue of whether this court has jurisdiction over the Tobacco Institute may be revisited should jurisdiction appear inappropriate at a later date. We note that if plaintiffs fail to demonstrate the participation of the Tobacco Institute in the commission of these alleged torts in this forum, sanctions will be imposed against plaintiffs and their counsel under Fed.R.Civ.P. 11 and 28 U.S.C. § 1927 (1994).

The motion to dismiss for lack of in *personam* jurisdiction is **DENIED.** This Order disposes of *Docket Documents Nos. 19, 25, 34, and 41.*

**IT IS SO ORDERED.**